Filed 9/27/13  In re L.H. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re L.H., a Person Coming Under the Juvenile Court Law. | D063959 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. J518128) |
| Plaintiff and Respondent, | |
| v. | |
| H.D., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

H.D. (Mother) appeals the judgment terminating her parental rights to her daughter, L.H.  Mother contends that the juvenile court erred in declining to apply the sibling

relationship exception to termination of her parental rights (Welf. & Inst. Code, § 366.26, subd. (c)(1)(B)(v)).[1]  We affirm the judgment.

BACKGROUND

In May 2011, the San Diego County Health and Human Services Agency (the Agency) filed a dependency petition on behalf of eight-year-old L.H.  The petition alleged that her father, U.H. (Father), had sexually abused her, and that Mother had been aware of the abuse and had failed to protect L.H.

L.H. was initially detained at Polinsky Children's Center (Polinsky) with her one-and-one-half-year-old sister, Leslie H.[2]  Later, the girls were detained with a nonrelative extended family member.  In July 2011, the court entered a true finding on the dependency petition, ordered L.H. placed in foster care and ordered reunification services for Mother.  The girls were returned to Polinsky for a couple of days before being moved to a foster home.  The girls lived together until September 2012, when the foster parents said that they could no longer care for Leslie due to her severe tantrums.  Leslie was moved to a new foster home.

Father was convicted of two counts of sexual intercourse with a child 10 years or younger (Pen. Code, § 288.7, subd. (a)) and was sentenced to consecutive prison terms of 50 years to life.  L.H. testified at his criminal proceedings.  Mother pled guilty to misdemeanor child endangerment (Pen. Code, § 273a, subd. (a)) and was placed on three years' probation.  In

---

[1]     Further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]     Leslie is not a subject of this appeal.  We refer to L.H. and Leslie together as the girls.

2

March 2012, L.H. refused to visit Mother and there were no further visits. In June, the criminal court issued protective orders prohibiting Mother and Father from contacting L.H.

At the combined 12- and 18-month review hearing in December 2012, the court terminated Mother's services and set a section 366.26 hearing. In May 2013, the court terminated parental rights.

## DISCUSSION

If a dependent child is adoptable,[3] the court must terminate parental rights at the section 366.26 hearing unless the parent proves the existence of a statutory exception. (§ 366.26, subd. (c)(1).) Section 366.26, subdivision (c)(1)(B)(v) provides an exception to the termination of parental rights when there would be a substantial interference with the child's sibling relationship and the severance of the relationship would be so detrimental to the child as to outweigh the benefits of adoption. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 951-953.) The juvenile court must "balance the beneficial interest of the child in maintaining the sibling relationship, which might leave the child in a tenuous guardianship or foster home placement, against the sense of security and belonging adoption and a new home would confer." (*Id.* at p. 951, citing *In re Autumn H*. (1994) 27 Cal.App.4th 567, 575.) Factors to be considered include whether the children were raised in the same home; whether they shared significant common experiences or have existing close and strong bonds; and whether ongoing contact is in the child's best interests, including his or her long-term emotional interests, as compared to the benefits of adoption. (§ 366.26, subd. (c)(1)(B)(v).)

---

3       Mother does not challenge the adoptability finding.

There is substantial evidence to support the court's finding that the girls' relationship was not so close that severing the bond would be detrimental to L.H.[4] (*In re L.Y.L., supra,* 101 Cal.App.4th at pp. 947, 952.)  In August 2009, when Leslie was born in San Diego, L.H. was six and one-half years old and was living with extended family members in a foreign country. Later that year, L.H. returned to the United States.  The girls lived together in the family home until their detention less than two years later.  They also lived together for one year four months while this case was pending.  Leslie was moved to a different foster home seven and one-half months before the hearing, but the girls saw each other frequently.  The two foster families were related, lived near each other and spent a great deal of time together.  Leslie's foster parents wished to adopt her, but her section 366.26 hearing had not taken place at the time of the hearing at issue in this appeal.

L.H.'s foster mother said that there was "a strong connection" between 10-year-old L.H. and three-and-one-half-year-old Leslie.  The court-appointed special advocate (CASA) believed that the girls were "very close" and that "it would be detrimental for [L.H.] if Leslie [were] moved to a new family and she was not able to maintain a close relationship with Leslie . . . ."  The CASA also noted that L.H. had "a very strong attachment to the foster mother" and recommended that L.H. remain in the foster home and that parental rights be terminated, with a permanent plan of adoption.  The social worker characterized the sibling bond as "ambivalent" but "improving" in that the girls enjoyed each other's company, were starting to have overnight visits and talked about each other more frequently than they had

---

4    The court did not make a finding regarding whether termination of parental rights would substantially interfere with the girls' relationship, and we need not address that issue in view of the court's finding that severing the relationship between the girls would not be detrimental to L.H.

4

earlier in the case. The social worker testified that "there [was] no bond that would outweigh the benefits of adoption."

At the time of the hearing, L.H. had lived with the foster parents for one year nine months. She was thriving in their care and felt safe with them. L.H. was securely bonded with the foster parents and called them "mom" and "dad." The foster parents were committed to adopting L.H. The social worker recommended a permanent plan of adoption even if it meant an end to sibling contact, noting that L.H. had been severely traumatized by abuse and that it was in her best interests to stay in a home where she felt safe and protected.

DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:

BENKE, Acting P. J.

HUFFMAN, J.